JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Gwendolyn Hall

**DEFENDANTS**

Accolade, Inc.; Elizabeth Napolitano

**(b)** County of Residence of First Listed Plaintiff   **Montgomery**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Montgomery**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tiffanie C. Benfer, Esquire
Hardwick Benfer LLC
179 N. Broad Street, Doylestown, PA 18901

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq; 42 U.S.C. § 1981; 42 U.S.C. §12101, et seq.; 29 U.S.C. § 2601 et seq.
Brief description of cause:
Race Discrimination; Disability Discrimination and FMLA Claim

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 150,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE Gene E.K. Pratter    DOCKET NUMBER 2:17-cv-03423-GEKP

DATE
02/09/2018

SIGNATURE OF ATTORNEY OF RECORD
*JCBenfer*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2522 Regatta Circle, Norristown, PA 19401

Address of Defendant: 660 West Germantown Pike, Suite 500, Plymouth Meeting, PA 19462

Place of Accident, Incident or Transaction: Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐    No☑

Does this case involve multidistrict litigation possibilities?    Yes☐    No☑

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐    No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐    No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐    No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐    No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Tiffanie C. Benfer , counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 02/09/2018 _____ 202096

Attorney-at-Law    Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/09/2018 _____ 202096

Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___2522 Regatta Circle, Norristown, PA 19401___

Address of Defendant: ___660 West Germantown Pike, Suite 500, Plymouth Meeting, PA 19462___

Place of Accident, Incident or Transaction: ___Pennsylvania___

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☑

Does this case involve multidistrict litigation possibilities?   Yes☐   No☑

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, ___Tiffanie C. Benfer___, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: ___02/09/2018___   ___J.C. Benfer___   ___202096___
                          Attorney-at-Law           Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___02/09/2018___   _____   ___202096___
                          Attorney-at-Law           Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| **Gwendolyn Hall** | : | CIVIL ACTION |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **Accolade Inc. and  Elizabeth Napolitano** | : | **NO.** |
|  | : |  |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                              ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                              ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                                                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                                                   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| **02/09/2018** | **Tiffanie C. Benfer, Esq.** | **Gwendolyn Hall** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| **215-230-1912** | **215-230-1913** | **tbenfer@hardwickbenfer.com** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

HARDWICK BENFER, LLC
BY:    **TIFFANIE C. BENFER, ESQ.** (Attorney I.D. No. 202096)
       **JILL WALSH, ESQ.** (Attorney I.D. No. 313525)
179 North Broad Street
Doylestown, PA. 18901
Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GWENDOLYN HALL,** | : | No. _____ |
| Plaintiff | : | |
| | : | |
| | : | |
| v. | : | |
| | : | Jury Trial Demanded |
| **ACCOLADE, INC., and** | : | |
| **ELIZABETH NAPOLITANO,** | : | |
| Defendants | : | |

---

## COMPLAINT

## I.    INTRODUCTION

1.    This action for equitable, monetary, and other relief is brought by Plaintiff,

Gwendolyn Hall, to redress intentional violations by Defendants, Accolade, Inc. and Elizabeth

Napolitano, of rights secured by the laws of the United States and the statutory and common law

of the Commonwealth of Pennsylvania.[1]

---

[1] Plaintiff will move to amend this complaint to include a claim under the PHRA for disability discrimination once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission. Any additional claims under the PHRA will identically mirror the claims set forth in this complaint.

## II.   JURISDICTION

2.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000e, *et seq.,* the Americans with Disabilities Act of 1990 (ADA), the Americans with Disabilities Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101, *et seq.*, the Civil Rights Act of 1866, as amended 1991, 42 U.S.C. §1981, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 42 P.S. § 951, *et seq.*, as amended, 1991.

3.      Plaintiff, Gwendolyn Hall, has exhausted available federal administrative remedies. Plaintiff filed two discrimination/retaliation charges with the Equal Employment Opportunity Commission ("EEOC"): Charge No. 530-2016-03727, on or about August 16, 2016 and Charge No. 530-2017-02281 on or about April 14, 2017.  On November 16, 2017, the EEOC issued a Right-to-Sue letter for Charge No. 530-2016-03727 and on December 19, 2017, the EEOC issued a Right-to-Sue letter for Charge No. 530-2017-02281.  This suit is timely filed.

## III.   VENUE

4.      All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania as the place in which the claims arose and the place where the Defendant, Accolade, Inc., conducts business.

5.      Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(b), (c) and (d) and 42 U.S.C. § 2000e-5(f)(3).

## IV.   PARTIES

6.      Plaintiff Gwendolyn Hall (hereinafter "Plaintiff or "Ms. Hall") is an adult female who currently resides in Montgomery County, Pennsylvania.

2

7.     Accolade, Inc. (hereinafter "Defendant" or "Accolade") is a corporation headquartered at 660 West Germantown Pike, Suite 500, Plymouth Meeting, Montgomery County, Pennsylvania, 19462 and is an employer within the meaning of the applicable legislation cited herein.

8.     Defendant Elizabeth Napolitano is the Executive Vice President of People & Culture for Accolade, Inc., 660 West Germantown Pike, Suite 500, Plymouth Meeting, Montgomery County, Pennsylvania, 19462.

## V.     STATEMENT OF FACTS

### Background

9.     Accolade hired Ms. Hall as a Health Assistant on or about April 16, 2012.

10.     Health Assistants answer and place phone calls to/from clients, responding to questions regarding health plan coverage and care options.

11.     Accolade required Health Assistants to ask questions of its clients, which at times required the assistants to probe into sensitive and confidential matters unrelated to the client's call.

12.     Accolade's mandate to ask probing, off-topic, personal questions is contrary to African-American culture.

13.     Ms. Hall explained to her supervisors that asking probing, off-topic, personal questions is contrary to African-American culture.

14.     Accolade reprimanded Ms. Hall for not to asking enough probing, off-topic, personal questions.

15.     In or about March 2015, Val Voluntad, a Lead Health Assistant who at the time worked closely with Tom Spann, Accolade's Chief Executive Officer, called Ms. Hall at home to

3

advise Ms. Hall that blacks, especially those of Ms. Hall's age, would never get ahead at Accolade.

16.     In or about June 2015, in a statement to employees, Tom Spann, Accolade's Chief Executive Officer, publicly acknowledged Accolade's "insufficient racial diversity, particularly of African-Americans" in promotional opportunities.  Mr. Spann also stated that he "failed to make the extra effort for minorities that is (unfortunately) required in a world with lots of history and with the unconscious biases that we all have."

17.     In or about August 2015, with Mr. Spann's support, Ms. Hall founded the African-American Employee Resource Group (AAERG) at Accolade to address concerns of the minority employees; including but not limited to low promotion rates.

18.     Ms. Hall served as Chairperson of the AAERG from August 2015 through January 2017.

19.     During Ms. Hall's tenure as Chairperson of the AAERG, she took part in discussions about racial discrimination at Accolade with her coworkers and in the presence of Elizabeth Napolitano, the Executive Vice President of People & Culture for Accolade, Inc. as well as other Accolade Executives.

20.     In or about February 2016, Accolade hired Mark Green as its Director of Diversity in response to the underrepresentation of minorities at Accolade.

21.     Shortly after Mr. Green was hired, Mr. Green acknowledged to Ms. Hall the underrepresentation of minorities at Accolade, yet also stated that she should not expect to fuse black people into a company and have them be successful.

**Accolade Denies Ms. Hall Promotional Opportunities**

22.     During her tenure, Ms. Hall continuously worked toward completing the steps necessary to be promoted to "Lead Health Assistant," the position right above Health Assistant.

23.     Ms. Hall never got promoted to "Lead Health Assistant" because each time she got close to meeting the prerequisites, Accolade altered the benchmarks required to become a "Lead Health Assistant."

24.     Upon information and belief, the majority of promotions to "Lead Health Assistant" are given to young, white employees.

25.     Upon information and belief, Ms. Hall never got promoted at Accolade because of her race.

26.     During her tenure at Accolade, Ms. Hall also applied for promotional opportunities outside of the call center but Accolade never considered her applications.

27.     Accolade's policy states that internal candidates will receive email confirmation of submitted job application within 24 hours.

28.     The Company policy also indicates non-selected internal candidates who do not meet the minimum qualifications will receive feedback and coaching from Accolade recruiters to help the employee gain the skills and experience necessary for a promotion.

29.     Accolade never interviewed Ms. Hall for any of the positions she applied for: Accolade Ally Position, Recruiter Coordinator, Development Center Guide (two times), and Knowledge Content Analyst.

30.     Accolade never advised Ms. Hall as to why she was not selected for interviews.

31.     Accolade never provided Ms. Hall with feedback or coaching by Accolade recruiters to help her develop her skills and experience for future promotional opportunities.

32.     Ms. Hall asked her supervisors numerous times why Accolade failed to follow its internal candidate process for each of her applications, but she never received an explanation.

33.     In or about January 2016, Ms. Hall asked her Caucasian supervisor, Kate Edwards, for information about an apprenticeship program that a coworker had participated in, which led to the coworker's promotion.

34.     Ms. Edwards denied the existence of a formal apprenticeship program.

35.     In January 2016, Accolade implemented a new process to attain promotions within the call center called the "Milestone Promotion Process."

36.     The "Milestone Promotion Process" required an employee to be rated "exceeding" in all four "buckets" to be promoted.

37.     In March of 2016, Accolade used the "Milestone Promotion Process" to evaluate its call center employees.

38.     Upon information and belief, in March 2016, Accolade evaluated the employees working in the call center and disproportionately classified the white employees at higher levels than the black employees, including Ms. Hall.

39.     Upon information and belief, at the conclusion of the March 2016 evaluation process, most of the black employees were classified as level "B," despite their years of experience, and their white counterparts with less experience received higher classifications.

40.     A level "B" classification under the "Milestone Promotion Process" is just one step above a new hire.

41.     In March 2016, Ms. Hall was classified as a level "B" despite her four and a half years of experience.

42.     Ms. Hall was informed that she received lower performance rankings in part because of the way she speaks, however, when she asked how she should speak differently, she was not given any specific examples. Ms. Hall then asked if the issue was that she didn't talk like her white peers. She received no response from her supervisors.

43.     Ms. Hall spoke to Accolade's new Chief Executive Officer (CEO), Rajeev Singh, on June 15, 2016.  Ms. Hall informed Mr. Singh she had applied for four positions within the company, and each time the company failed to follow its internal process with regard to her applications.

44.     On June 17, 2016, Ms. Hall sent Mr. Singh an email as a follow-up to their June 15, 2016, telephone conversation.  In her email, Ms. Hall reiterated that she had applied for multiple positions, and each time the company failed to follow its internal process with regard to her applications.

45.     On or about June 30, 2016, Ms. Hall applied for the Development Center Guide position.  This was the second time Ms. Hall applied for this position at Accolade.

46.     On or about July 20, 2016, Ms. Edwards, Ms. Hall's supervisor, refused to advise Human Resources that Ms. Hall was qualified for the Development Center Guide position, despite Ms. Hall meeting the minimum qualifications.

47.     Once again, Ms. Hall was not considered for another position at Accolade.

48.     On or about August 16, 2016, Ms. Hall filed a charge of discrimination (EEOC Charge No. 530-2016-03727) on the basis of race, color, sex, age, and retaliation.

49.     On August 23, 2016, Ms. Hall notified Accolade that she would need to take a short leave of absence afforded by the Family Medical Leave Act (FMLA) for a medical procedure beginning November 9, 2016.

50.     On or around August 30, 2016, the EEOC notified Accolade about Ms. Hall's
Charge of Discrimination (Charge No. 530-2016-03727).

51.     On October 19, 2016, shortly after Accolade received notice of Ms. Hall's EEOC
charge and just weeks before her scheduled surgery and FMLA leave, Ms. Elizabeth Napolitano,
EVP of People & Culture, presented Ms. Hall with a separation agreement.  Ms. Anne Marie
Aponte, Sr. VP of Operations, also attended the meeting. Ms. Napolitano offered Ms. Hall the
separation package under the pretext that "they care about [her] and want [her] to be happy." Ms.
Hall declined the offer.

52.     Immediately after Ms. Hall declined the separation package, at the very same
meeting, Ms. Napolitano gave Ms. Hall a formal written warning that stated her employment
would be terminated immediately if she forwarded work-related emails/documents to her
personal email account.  Ms. Napolitano's explanation for the written warning was to "convey
the seriousness of the situation."

53.     Upon information and belief, Ms. Hall was singled out and reprimanded for
sending work-related emails/documents to her personal email account, despite it being a
commonplace occurrence among employees.

54.     One day later, on October 20, 2016, Ms. Hall met with Ms. Napolitano, again
under the pretense of discussing the agenda for an upcoming AAERG meeting.  Instead, Ms.
Napolitano brought Accolade's Director of Human Resources, Heather Altieri, to this non-
private meeting in the lunchroom, and Ms. Hall was asked if she had any questions about the
separation papers offered to her the day before.  Again, Ms. Hall refused to accept the separation
package.

55.     On November 7, 2016, two days before Ms. Hall's scheduled surgery, Ms. Napolitano informed Ms. Hall that she should step down from serving as Chair of the AAERG. Ms. Hall declined.

56.     On November 9, 2016, Ms. Hall took leave in accordance with the Family Medical Leave Act.

57.     Over the next several weeks, Ms. Napolitano repeatedly tried to force Ms. Hall to step down as AAERG Chair. Ms. Hall considered Ms. Napolitano's actions to be harassing.

58.     On December 21, 2016, Ms. Hall returned to work.

59.     On February 7, 2017, Ms. Hall was terminated.

60.     Ms. Napolitano terminated Ms. Hall under the pretext of alleged misconduct in the prior two weeks.

61.     Accolade provided no information as to the conduct that allegedly merited Ms. Hall's termination.

62.     Prior to February 7, 2017, Ms. Hall never received any warnings regarding her alleged misconduct.

63.     Ms. Hall was also informed that she was terminated because the company thought she might know something about the "letters."

64.     Accolade provided no information to Ms. Hall about the referenced "letters."

65.     Ms. Hall's termination letter makes no reference to termination for cause due to conduct or the "letters."

66.     Accolade terminated Ms. Hall's employment because of her disability or because Accolade regarded her as disabled.

67.     Accolade terminated Ms. Hall's employment in retaliation for exercising her rights under FMLA.  Ms. Hall was terminated shortly after returning from FMLA.

## COUNT I

### PLAINTIFF'S CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. § 2000e-2(a)(1)

### (Race Discrimination)

68.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

69.     Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's race.

70.     Ms. Hall's supervisors subjected her to intentional race discrimination.  Ms. Hall received disparate treatment and disparate wages on the basis of her race.

71.     Ms. Hall complained about the disparate treatment to her supervisors.  Accolade took no action to correct the discrimination.

72.     Accolade subjected Ms. Hall to a racially hostile and demeaning work environment marked by disrespect and discrimination by her supervisors.

73.     Ms. Hall was subjected to discrimination as a direct result of her race.

74.     The discriminatory treatment caused Ms. Hall to suffer emotional distress, mental anguish, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc., for compensatory damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, punitive damages,

reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

### PLAINTIFF'S CLAIMS UNDER TITLE VII
### 42 U.S.C. § 2000e-3(a)

### (Retaliation - Race)

75.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

76.     Title VII of the Civil Rights Act of 1964 prohibits retaliation against employees for opposing unlawful discrimination or participating in a protected activity.

77.     Accolade subjected Plaintiff to adverse action because she reported and opposed unlawful discrimination and harassment that she was subjected to as a member of a protected class.

78.     Accolade subjected Plaintiff to adverse employment action by failing to promote Ms. Hall and terminating her employment.

**WHEREFORE,** Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc., for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT III

### PLAINTIFF'S CLAIMS UNDER THE CIVIL RIGHTS ACT OF 1866, AS AMENDED 1991, 42 U.S.C. § 1981

79.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

80.     Section 1981 guarantees to all persons the right to make and enforce contracts, including performance, modification, and termination as well as enjoyment of benefits, privileges, terms, and conditions of the contractual relationship.

81.     In April 2012, Accolade hired Ms. Hall as a Health Assistant.

82.     Ms. Hall reasonably relied upon Accolade's express and implied representation of good faith and fair dealing and accepted a full-time position offered in reasonable anticipation and belief that she would be treated fairly and equitably by Accolade in accordance with state and federal laws.

83.     In good faith reliance upon Accolade's promises as aforesaid, Ms. Hall put forth her best effort and performed all job duties assigned to her and more than satisfactorily fulfilled all of her job duties and tasks.

84.     Despite Ms. Hall's best efforts, Accolade embarked on a course of racial discrimination.

85.     Accolade's actions interfered with Ms. Hall's contractual relations, in violation of 42 U.S.C. § 1981.

86.     The wrongful acts of Accolade complained of herein were undertaken deliberately, intentionally, and maliciously and were based on Plaintiff's race in violation of 42 U.S.C. §1981.

87.     Pursuant to 42 U.S.C. § 1981, Ms. Hall is entitled to an award of compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental

12

anguish, loss of enjoyment of life, and other non-pecuniary losses sustained by Ms. Hall as a result of Accolade's intentional discrimination against her on the basis of her race.

88.     Pursuant to 42 U.S.C. § 1981, Ms. Hall is entitled to an award of punitive damages where Accolade engaged in intentional racial discrimination against her and acted with malice or reckless indifference to the federally protected rights of Ms. Hall as an aggrieved individual.

**WHEREFORE**, Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc., for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars; plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT IV

### PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq.*

#### (Disability Discrimination)

89.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

90.     At all times material hereto, Plaintiff is, and was a qualified individual with a "disability" within the meaning of the ADA, as amended by the ADA-AAA, as defined at 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g), in that she has a physical or mental impairment that limits one or more of her major life activities, has a record of such impairments, and/or is perceived and regarded by Defendant as having such an impairment. Plaintiff is substantially limited in the major life activities that require the use of her left arm/shoulder.

13

91.     At all times material hereto, Plaintiff was capable of performing the essential functions of her job with a reasonable accommodation.

92.     Plaintiff advised Accolade of her need for a leave of absence to accommodate her physical disability.

93.     Accolade asked Ms. Hall to resign before she went out on medical leave and she refused.

94.     Accolade terminated Ms. Hall shortly after she returned from her medical leave of absence under the pretext of misconduct, despite the fact that Ms. Hall never received any warning regarding alleged misconduct.

95.     Ms. Hall's termination letter makes no reference to termination for cause due to conduct.

**WHEREFORE**, Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc., for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT V

### PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq.*

### (Retaliation for Requesting an Accommodation)

96.     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

14

97.     At all times material hereto, Plaintiff was a qualified individual with a "disability" within the meaning of the ADA, as amended by the ADAA, as defined at 42 U.S.C. § 12102(2), 29 C.F.R. § 1630.2(g), in that she has a physical impairment that limits one or more of her major life activities, and that she was capable of performing the essential functions of her job with a reasonable accommodation.

98.     Plaintiff advised Accolade of her need for a reasonable accommodation in the form of a leave of absence for approximately 7 weeks in order to recover from surgery.

99.     Accolade tried to get Ms. Hall to accept a separation package before she went out on medical leave and she refused.

100.    Defendants subjected Ms. Hall to adverse action when they wrote her up shortly before her scheduled leave of absence.

101.    Ms. Napolitano began harassing Ms. Hall immediately upon her return from her leave of absence.

102.    Accolade terminated Ms. Hall shortly after she returned from her medical leave of absence under the pretext of misconduct, despite the fact that Ms. Hall never received any warning regarding alleged misconduct.

        **WHEREFORE**, Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc. for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

15

## COUNT VI

### PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 951, *et seq.)*

### (Race Discrimination)

103.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

104.    Pennsylvania's Human Relations Act, 43 P.S. § 951, *et seq.,* provides for compensatory damages in appropriate cases of violation of the Act's prohibition of discrimination based on race.

105.    Accolade's deliberate discrimination against Ms. Hall because of her race is unlawful discrimination and is in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* This conduct has caused Ms. Hall to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

106.    The egregious nature of Accolade's illegal misconduct and the extent of Ms. Hall's financial, physical, and emotional injuries and damages justify a recovery of monetary damages for the value of Plaintiff's claims, and the facts and circumstances of this case entitle Plaintiff to additional damages under state law.

**WHEREFORE,** Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc., for compensatory damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

16

## COUNT VII

### PLAINTIFF'S CLAIMS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 951, *et seq.*)

#### (Retaliation - Race)

107.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

108.    Accolade subjected Plaintiff to adverse action because she reported and opposed unlawful discrimination and harassment that she was subjected to as a member of a protected class.

109.    Accolade subjected Plaintiff to adverse employment action by failing to promote Ms. Hall and terminating her employment.

**WHEREFORE,** Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendant, Accolade, Inc., for compensatory damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT VIII

### PLAINTIFF'S CLAIMS UNDER THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2601 *et seq.*

#### AGAINST ALL DEFENDANTS

110.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

111.    The Family Medical Leave Act, 29 U.S.C. § 2615(a)(2) ("FMLA"), makes it unlawful for an employer to interfere with an employee's right to take leave under the FMLA.

112.    Defendants' actions in asking Ms. Hall to resign just weeks before her FMLA leave was to start was intended to interfere with Ms. Hall's right to take the leave.

113.    The Family Medical Leave Act makes it unlawful for an employer to retaliate against an employee because the employee has taken or sought a leave under the FMLA.

114.    Defendants subjected Ms. Hall to adverse action when they wrote her up shortly before her scheduled FMLA leave.

115.    Ms. Napolitano subjected Ms. Hall to adverse action immediately upon her return from her leave of absence.

116.    Plaintiff was subjected to adverse action in that her employment was terminated because she took a leave of absence to which she was entitled under the FMLA.

117.    Defendant Elizabeth Napolitano, EVP of People Support, acted in the interest of her employer Accolade with regard to the actions she took concerning Ms. Hall.  Ms. Napolitano was in whole or in part responsible for the decision to terminate Plaintiff and for the notification of Plaintiff's termination in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

118.    On information and belief, Defendants' decision to terminate Plaintiff's employment was in retaliation for taking leave under the FMLA.

119.    Defendants' deliberate retaliation and interference is unlawful discrimination in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*  This conduct has caused Plaintiff to suffer emotional distress, mental anguish, monetary loss, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

    WHEREFORE, Plaintiff, Gwendolyn Hall, respectfully requests judgment in her favor and against Defendants for compensatory and punitive damages in an amount exceeding One Hundred Fifty Thousand ($150,000) Dollars, plus costs of this action, reimbursement of

back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all counts complained of herein for which she is entitled to a jury trial.

Respectfully submitted,

**HARDWICK BENFER, LLC**

Tiffanie C. Benfer, Esquire
Jill L. Walsh, Esquire
179 N. Broad Street
Doylestown, PA 18901
(215) 230-1912
(215) 230-1913 – fax
*Attorneys for Plaintiff, Gwendolyn Hall*

Dated: <u>February 9, 2018</u>